## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | |
|---|---|
| Theodore G. Hartsock, Jr., as Personal Representative of the Estate of Sarah Mills Hartsock, ) ) ) ) | |
| Plaintiff, ) ) | Civil Action No.: 2:11-CV-00363-PMD |
| v. ) ) | |
| American Automobile Insurance Company, a Division of Fireman's Fund Insurance Company, ) ) ) ) | **ORDER** |
| Defendant. ) ) | |

This matter is before the Court on Defendant American Automobile Insurance Company's ("Defendant" or "AAIC") motion to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(6). Having reviewed the motion and briefs submitted by the parties and the relevant statutes and case law, the Court denies Defendant's motion to dismiss.

### BACKGROUND

Plaintiff Theodore G. Hartsock, Jr. resides in Charlotte, North Carolina. At the time of her death, his wife Sarah Mills Hartsock was a resident of Charleston County, South Carolina. Mrs. Hartsock died on July 6, 2010 as a result of injuries sustained in an automobile accident on Interstate 26 in Clarendon County, South Carolina. Plaintiff alleges that the accident occurred when the left front tire of a motor home driven by James Edward Rodrigues detreaded, which caused him to lose control over the vehicle, cross through the median, and strike Mrs. Hartsock's vehicle head on. At the time of the accident, Rodrigues was towing a pickup truck behind the motor home. Both the motor home and the pickup truck were insured by State Farm Mutual

1

Automobile Insurance Company ("State Farm") under separate policies, and Mrs. Hartsock's vehicle was insured by Unitrin Auto and Home Insurance Company ("Unitrin"). Liability coverage under the State Farm and Unitrin policies were tendered prior to the filing of this action. The vehicle Mrs. Hartsock was driving was registered in South Carolina and bore a South Carolina license tag, BPX-728. In addition to the Unitrin policy, Mrs. Hartsock's vehicle was also covered under an excess policy issued by AAIC, which provided UIM coverage of $1,000,000.

On November 23, 2010, Plaintiff made a demand to AAIC for UIM benefits pursuant to the AAIC homeowner's policy insuring Mr. and Mrs. Hartsock, but the demand was ignored. On January 19, 2011, Plaintiff commenced his wrongful death and survival action in this Court (the "underlying tort action," Civil Action No. 2:11-cv-147-PMD). On January 26, 2011, Plaintiff served AAIC with copies of the pleadings in the underlying tort action as required by South Carolina Code section 38-77-160. On February 14, 2011, AAIC filed an appearance in the underlying tort action pursuant to its rights under South Carolina Code section 38-77-160 as a possible UIM carrier. Also on February 14, 2011, Plaintiff filed this action against AAIC alleging Bad Faith and Negligent Claims Handling. On March 10, 2011, Defendant filed a motion to dismiss pursuant to rule 12(b)(6). After the Court issued an order extending the deadline for Plaintiff to respond to Defendant's motion, on April 4, 2011, Plaintiff filed a memorandum in opposition to Defendant's motion to dismiss. Also on April 4, 2011, Defendant filed an answer to the complaint and a counterclaim for declaratory judgment.

## STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted is a challenge to the legal sufficiency of a complaint." *Federal Trade Comm'n v.*

*Innovative Mktg., Inc.,* 654 F.Supp.2d 378, 384 (D. Md. 2009). The Supreme Court recently held that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955 (2007)). The Supreme Court noted that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and noted that "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id., see also Harman v. Unisys Corp.,* 2009 WL 4506463 *2 (4th Cir.2009). The Court added that "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions," and that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The Court further noted that "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950.

## **ANALYSIS**

Defendant filed a motion to dismiss both counts of Plaintiff's Complaint on March 10, 2011. In its memorandum in support of its motion to dismiss, Defendant argues that assuming there is UIM coverage in this case, "until and unless Plaintiff obtains a verdict that exceeds $1,250,000 (the amount already tendered by State Farm and Unitrin), and AAIC refuses to pay the applicable UIM benefits without a reasonable basis for such refusal, there can be no basis for bad faith on the part of AAIC." Def's Mem. at 7. Defendant's argument is based on its claim that North Carolina law applies in this case. "It is well settled under North Carolina law that

unless an insured is 'legally entitled to recover damages' from the underinsured motorist, the policy upon which he sues precludes him from recovering against the UIM carrier." *Id*. at 5. In its counterclaim for declaratory judgment, Defendant also argues that "[p]usuant to the laws of North Carolina, UIM coverage is determined to be the difference between any amount paid to the claimant under an exhausted liability policy or policies and the limit of UIM coverage applicable to the motor vehicle in the accident. Assuming, without admitting, that the policy provided UIM coverage to the vehicle involved in the accident that is the subject of this litigation, the limit of UIM coverage available under the Policy is $1,000,000. As Plaintiff has already received in excess of $1,000,000 for the subject accident, no UIM benefits are owed under North Carolina law." Def's Answer at 5.

In his memorandum in opposition to Defendant's motion to dismiss, Plaintiff claims that under South Carolina law, Plaintiff's action is not premature and meets the standard of plausibility more than sufficient to withstand Defendant's motion to dismiss. Plaintiff argues that under South Carolina law the insured need not wait until a verdict is obtained in the underlying tort action to commence an action for bad faith against the insurer. Pl's Mem. at 5 (citing *Myers v. State Farm Mut. Auto. Ins. Co.,* 950 F. Supp. 148 (D.S.C. 1997)). Plaintiff argues that as long as the insured first files suit against the at-fault driver and serves the insurer with a copy of the complaint in that action in accordance with South Carolina Code section 38-77-160, a bad faith action may be commenced against the insurer. *Id.* (citing *Snyder v. State Farm Mut. Auto. Ins. Co.,* 856 F. Supp. 2d 453 (D.S.C. 2008); *Halmon v. Am. Int'l Group, Inc. Ins. Co.,* 586 F. Supp. 2d 401 (D.S.C. 2007)).

First, the Court must determine which state's law controls the validity and construction of the insurance contract at issue in this litigation. This Court has diversity jurisdiction pursuant

4

to 28 U.S.C. § 1332.  In a diversity case, a federal court must apply the choice of law rules of the state in which it is located.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487 (1941); *see also Spartan Iron & Metal Corp. v. Liberty Ins. Corp.,* 6 Fed. Appx. 176 (4th Cir. 2001).  Historically, in insurance coverage disputes, South Carolina courts have followed the doctrine of *lex loci contractus,* and applied the law of the state where the contract was formed.  *See Sangamo Weston, Inc., v. Nat'l Surety Corp.,* 414 S.E.2d 127 (S.C. 1992).  However, this rule was modified by a statute enacted in 1947 and now codified at South Carolina Code section 38-61-10.  That statute provides:

> All contracts of insurance on property, lives, or interests in this State are considered to be made in the state and all contracts of insurance the applications for which are taken within the State are considered to have been made within this State and are subject to the laws of this State.

S.C. Code Ann. § 38-61-10.  "Where this statute applies, it governs as South Carolina's rule of conflicts."  *Sangamo,* 414 S.E.2d at 130.  In *Sangamo,* the South Carolina Supreme Court considered the applicability of S.C. Code Ann. § 38-61-10 to an insurance contract.  *Id.*  At issue were insurance policies covering a South Carolina manufacturing facility that had been executed outside of South Carolina by non-citizens of South Carolina.  The insured sought a declaratory judgment to determine the scope of insurance coverage.  The *Sangamo* court first had to resolve "which state's law should be applied in interpreting these insurance contracts."  *Id.* at 129.  Critical to this determination was the fact that the insured "property" at issue—Sangamo's Manufacturing facility—was located in South Carolina.  *Id.* at 130.  According to the court, "both parties [although not residents of South Carolina] availed themselves of the law of South Carolina when they respectively provided or received insurance on interests located in this state."  *Id.* at 131.  Thus, the court reasoned, pursuant to § 38-61-10, South Carolina law applied.

5

Pursuant to *Sangamo,* then, the Court must conduct a two-fold analysis to determine what law applies in this case. First, the Court must consider the applicability of § 38-61-10. *Id.* at 130. Secondly, the Court must address whether South Carolina has sufficient contacts creating a state interest in this dispute so that applying South Carolina's substantive law is consistent with the Full Faith and Credit Clause and the Due Process Clause. *Id.* at 131.

To determine whether § 38-61-10 applies, this Court first analyzes the expansive first prong of the *Sangamo* test. Pursuant to *Sangamo,* this Court's inquiry does not look to where the contract was formed, but instead focuses on whether the subject of the insurance contract is located in South Carolina. *Id.* at 130. AAIC contends that § 38-61-10 is inapplicable to the policy in this case because it was issued in North Carolina. However, as noted in *Sangamo,* under this statute it is immaterial where the contract was entered into. *Id.* "Further there is no requirement that the policyholders or insurers be citizens of South Carolina. What is solely relevant is where the property, lives, or interests insured are located." *Id.*

The AAIC policy at issue in this case, while issued in North Carolina and while covering some property in North Carolina, covers Mrs. Hartsock's vehicle, a vehicle that was registered in South Carolina and bore a South Carolina license tag, BPX-728. Additionally, while Mr. Hartsock was a resident of North Carolina, Mrs. Hartsock was a resident of Charleston County, South Carolina. Plaintiff's interest and property located outside of this state are not at issue here. In this action, Plaintiff seeks coverage solely on a vehicle registered and located in South Carolina. Therefore, as the policy relates to this action, it insures property in this state. Thus, under South Carolina conflict law, South Carolina substantive law governs this dispute. *See id.* at 148 ("Sangamo contends its interest and property extend beyond the State of South Carolina. Additionally, these policies cover Sangamo's interest and property located throughout the

6

country. However, Sangamo's interest and property located outside of this state are not at issue here. In this action Sangamo seeks coverage solely for the liability it incurred due to its operations within the State of South Carolina. Therefore, as these policies relate to this action, they insure property and interest in this state.")

The Court next considers whether applying § 38-61-10 in this matter is unconstitutional. In *Allstate Ins. Co. v. Hague,* 449 U.S. 302 (1981), the majority of the Supreme Court agreed that for a state's substantive law to be selected consistent with the Full Faith and Credit Clause and the Due Process Clause, the state must have a significant contact or significant aggregation of contacts, creating state interest, such that the choice of its law is neither arbitrary or fundamentally unfair. *Id.* at 313-14. In *Sangamo,* the South Carolina Supreme Court found that "insuring property, lives and interests in South Carolina constitutes a significant contact with this state . . . [a]lthough the parties are not residents of this state, both parties availed themselves of South Carolina when they respectively provided or received insurance on interests located in this state." *Sangamo,* 414 S.E.2d at 131. Thus, pursuant to *Sangamo*, the Court holds that Defendant's provision of UIM coverage to a vehicle registered in South Carolina allows the application of South Carolina law without offending the Full Faith and Credit Clause or the Due Process Clause.

Having determined that South Carolina substantive law applies in this action, the Court next turns to the issue of whether this action was brought prematurely because there has been no jury verdict in the underlying tort action. As required by § 38-77-160, Plaintiff served AAIC with copies of the pleadings in the underlying tort action before filing this action against AAIC alleging Bad Faith and Negligent Claims Handling. The Court finds that Plaintiff's action has not been filed prematurely. "[A]n insured is not required to obtain a judgment against an at-fault

7

driver before the insured's carrier's duty arises to exercise good faith and deal fairly with the insured regarding underinsured benefits. At most . . . the carrier's duty to act in good faith regarding underinsured benefits arises after the insured brings suit against the at-fault driver and serves the carrier with process. *A fortiori,* at the moment the duty arises, which is at least by that time, it can be breached by the carrier, which breach could very well occur prior to any judgment being rendered in the underlying tort action." *Myers v. State Farm Mut. Auto. Ins. Co.,* 950 F. Supp. 148 (D.S.C. 1997). As noted in *Myers,* "[s]everal other state courts have considered similar 'prematurity' arguments raised by insurance carriers as a defense. Those state courts have rejected the prematurity argument because, prior to an insured obtaining a judgment against the at-fault driver, the insured's carrier has the duty to act in good faith toward, and deal fairly with, its insured by investigating and processing the underinsurance claim, and, in cases of liability where it is clear that damages have been suffered by the insured that are greatly in excess of the tortfeasors' policy limits, the underinsured carrier may have a duty to make a settlement offer prior to its insured obtaining a judgment against, or exhausting the policy limits of, the tortfeasor." *Id.* at 150-51 (internal citations omitted).

This case squarely falls within the holding of *Myers.* Since Plaintiff had initiated his action against the at-fault driver and served all relevant documents from that action upon AAIC before initiating this action, the Court finds that this action is not premature and, therefore, denies Defendant's motion to dismiss. *See id.; see also Halmon v. Am. Int'l Ins. Co.,* 586 F. Supp. 2d 401 (D.S.C. 2007) (Duffy, J.) (dismissing Plaintiff's tort claims against insurer where Plaintiff failed to serve insurer with notice of the underlying tort action until *after* filing the complaint against the insurer).

8

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Defendant's motion to dismiss Plaintiff's Complaint is **DENIED.**

**AND IT IS SO ORDERED**.

PATRICK MICHAEL DUFFY
United States District Judge

**May 17, 2011**
**Charleston, South Carolina**

9